## Commonwealth, Department of Transportation v. Cariola

*Maurice Levin,* for Comm. Dept. of Transportation.

*John J. D'Angelo,* for defendant.

WILSON, *J.,* July 15, 1981—Shortly after 7:00 a.m. on the frigid morning of January 5, 1979, Joseph J. Silkowski, a police officer in the Stroud Township of Monroe County, was called to Stroud Mall to investigate two vehicles. There he found two automobiles, a blue compact and a station wagon parked side by side. The station wagon's engine was running, and he observed inside it two still human beings, Christine Reilly and Michael Link, both 26 years of age. On the dashboard were two glasses filled with a liquid. Officer Silkowski observed the female lying in the lap of the male who himself was slumped against the steering wheel. He immediately tried to open the car door and found that the driver's door would not open. He went to the rear and tried the back door to the station wagon. It too would not open. He then tried the passenger's side front door and was able to open it. He dragged Miss Reilly from the car. As he did so, he noticed the car was full of exhaust fumes. At approximately that time, other emergency vehicles arrived and removed Mr. Link. Officer Silkowski attempted cardiopulmonary resuscitation techniques to revive Miss Reilly, to no avail. She appeared to him to have died. She, along with Mr. Link, were taken to Pocono Hospital where they were recorded as having arrived "Dead on Arrival." Thus tragically ended the lives of two celebrants at a reunion party for Channel 22 of Wilkes Barre. The coroner, Robert M. Al-

len, who testified in court, found the cause of death to be carbon monoxide poisoning. This case comes before this court to determine in some degree the culpability for the deaths of these two young people. More specifically, to determine whether or not the certification as an official inspection station of Frank A. Cariola, operator number 08873-964 should be suspended for a period of three months for violation of Section 4727B of the Vehicle Code for a faulty inspection of a 1969 Chevy Station Wagon, registration number 20105U. That is the station wagon in which Michael Link and Christine Reilly died on January 5, 1979. This court addressed these issues. First, was the vehicle in which the deaths occurred the same vehicle which was inspected by the "Cariola Inspection Station?" Second, is it physically possible that the violations which were found on the vehicle on January 5, 1979 could have first occurred between the date of the inspection and the date of the deaths? This court after hearing the evidence concludes that the answer to the former is "Yes" and to the latter "No." Accordingly the court reinstated the suspension.

This court heard the case de novo to determine whether or not petitioner appellant is subject to suspension of his certificate of appointment as an official inspection station. Prior to the appeal, petitioner has had his appointment suspended for a period of three months by the Department of Transportation following a hearing which was scheduled for February 26, 1979.

On January 18, 1979, State Police Trooper Clyde F. Stryker examined and inspected the vehicle in question. His inspection disclosed that the tail pipe ended two and one-half inches inside the body and fender lines of the vehicle. He also noticed that while the engine was running exhaust fumes were

observed entering the vehicle in the left rear fender section. The hanger which connects the muffler to the vehicle was broken. Both of the tires were badly worn showing on 1/32 of an inch. The trailer hitch was mounted to the floor rather than to the frame, as required by law. Subsequent to that inspection, Officer Stryker inspected the car with a certified mechanic, Joseph Murray, on January 23, 1979. Pictures were taken of the vehicle. Those pictures have been admitted into evidence. The photographs are numbered one through twenty-one. Officer Stryker was able to determine that the speedometer had not worked since the time it had left the Cariola Inspection Station. The vehicle had been driven from the place where it was stored by the coroner to Walls Texaco Station, during that time the speedometer did not register. The trailer hitch that was attached to the car had rust on it. The muffler, the officer testified, did not appear to be damaged and from its appearance, appeared to be new. He testified that there was no way of determining when it had been installed. In his cross-examination, when asked about the investigation which he made as to the odometer's functioning, Trooper Stryker testified that he did not take the device apart, however he had seen a bill, which his counsel had in court at this hearing, that was dated prior to the time of fixing of the sticker on the vehicle. He said the bill showed the mileage to be the same as on the vehicle when he inspected it. In addition to the mentioned items of inspection the vehicle had substantial rust throughout its body. On his re-direct examination, when questioned about the cancerous condition about the automobile's body, Trooper Stryker testified that in his opinion such rust could not have occurred within, the 48 days between the time of the

inspection on November 13, 1978 and the date of the deaths on January 5, 1979.

The automobile mechanic, Mr. Murray, drove the car from Dick's Auto Yard to his own Texaco Station where he performed the inspection of January 23, 1979. He found that the front two tires were badly worn, the speedometer did not operate, the trailer hitch was installed without frame contact, the back wheels were down, the brake lines were down, the regular wheel cylinder was leaking and there were cancer spots throughout the outside of the vehicle body and the inner-fender. The left rear inner-fender was completely gone. Mechanic Murray testified on his re-direct that the condition of the automobile could not have occurred within a period of several months.

This court accepts and finds as facts the testimony as to the condition of the motor vehicle as it was inspected by Trooper Stryker and Mechanic Murray. Clearly under the law the vehicle would not pass inspection on that day in January, but the court is faced with determining whether or not those conditions existed on November 13, 1978. Any evidence to this point can only be circumstantial, but the inference raised from the testimony leads this court to believe that the conditions did exist on November 13, 1978. The experienced mechanic and trooper both testified that the cancerous condition of the vehicle had to have existed on November 13, 1978. If anything it got slightly worse, but certainly on November 13th, this court finds that it alone would have prevented the car from passing inspection. The testimony of appellant is that the vehicle was in good shape and that he passed it properly. If this case involved only one allegation of a faulty inspection possibly the court could agree with a view of the evidence more favorable to the owner, but in

this case the total preponderance of the evidence tends to indicate that the vehicle, if looked at, at all by the Cariola Station was looked at with blinders on. For example, the odometer on a vehicle is a fairly simple device to test. Certainly it is impossible for the vehicle to have the same mileage reading prior to the inspection, at the time of the inspection, and 48 days later. This court is particularly impressed with the testimony that the vehicle did not appear to be unduly damaged, and that there is no evidence to demonstrate or lead the court to believe that any of these conditions occurred after the inspection. Clearly the rust and the odometer existed prior to that time. With regard to the testimony on the tires, the court finds it difficult to believe the testimony of the Cariola Gas Station that the tires were proper. While there may be an inference raised that the car was driven many miles, there is no testimony and no facts upon which the court can make a finding as to the amount of mileage. Yet, having looked at the testimony as to the depth of the tread in the tires, and considered that in light of the rust and the faulty odometer, this court again is compelled to find that the Cariola Station conducted its inspection in a faulty and improper manner. Joseph Spera, when testifying for the Cariola Station, testified that a woman came into the station with two new tires which were mounted on the front of the Link vehicle. Obviously, defendant wishes us to believe that subsequent to mounting of those tires, they were removed. Even if the court were to believe that, which it does not, that does not account for the other items of faulty inspection with regard to this vehicle.

The November 13, 1978 inspection of this vehicle was improper, both as a matter of fact and as a matter of law. The owner of such an inspection station must bear full responsibility for an improper inspec-

tion by its employees. Our law requires that the complete operation of an official inspection station is the responsibility of the owner. The operators of official public inspection stations have strict responsibility for the conduct of their employees relative to the inspection of motor vehicles. Commonwealth Department of Transportation, Bureau of Traffic Safety v. Searer, _____ Pa. _____, 413 A.2d 1157 (1980). The facts of this case clearly support the action taken by the department of transportation. This court therefore entered its judgment in favor of the Department of Transportation upholding the suspension which it imposed as a result of the faulty and improper inspection, and ordered that the suspension be enforced.